William E. Haliday *v.* William Stott.

## SUPREME COURT—IN ADMIRALTY.

### W. E. HALIDAY *vs.* WILLIAM STOTT.

UNDER the last clause of the 84th Article of the Constitution of 1852, declaring
the judicial power of the Courts of this Kingdom to extend to all cases of
Admiralty and maritime jurisdiction : Held, that it embraces two great
classes of cases, viz: torts and contracts, the jurisdiction in the first depend-
ing upon locality, and in the last upon the nature of the contract ; and also
that it comprises cases arising under the general maritime law of the world,
together with those appertaining especially to the admiralty jurisdiction of

the nation, which last branch may be enlarged or circumscribed by the Legislature from time to time. ·

A party plaintiff may appeal to a Court of Admiralty for redress, if the act prohibited is a marine tort and the remedy prescribed by the statute is such as a Court of Admiralty is competent to afford, although a Court of common law may also have concurrent jurisdiction of the matter.

Where the master of a vessel conveyed a person out of the Kingdom without a passport in contravention of law (Section 651, Civil Code) : Held, that a creditor of such person conveyed away might institute a suit on the Admiralty side of the Court against the master to recover his debt, though as against the master, the like remedy might be sought at common law.     ·

Before Justice ROBERTSON—On appeal.

The libel alleges, in substance, that Michael Morton Webster, late of Honolulu, was and still is indebted to the libellant·in the sum of sixty-four dollars ; that on or about the 8th of September last, the libellant having previously filed a notification at the Custom House to prevent the said Webster from obtaining a passport to leave the Kingdom, the respondent did, as master in command of the bark " Comet," trading to California, convey the said Webster out of the Kingdom without a passport, contrary to law ; and that·the respondent has thereby rendered himself liable under the statute to the payment of the debt so alleged to be due from Webster to the libellant.     ·

A motion was made by respondent's counsel before the single Justice to dismiss the libel, on the ground that it did not set forth a marine tort coming within the admiralty and maritime jurisdiction of the Court, but a case on which the remedy must be sought at common law. The Justice sustained the motion, and the libellant appealed to the full Court, before whom the question·has been again argued.

The statutory provision upon which the libellant's claim is founded is contained in Section 651 of the Civil Code, and reads as follows : " Every master, or commanding officer of a vessel, who shall convey out of this Kingdom any person not having a passport shall be subject to a fine of fifty dollars, and be liable for all debts which such person may have left unpaid in this Kingdom ; and if he shall fail to pay such fine and debts, such vessel shall be subject to seizure, condemnation and sale for the payment thereof."     \

It is contended on the part of the respondent that the act

complained of is not, properly speaking, a *tort*, although it may be an act of such a nature as would support an action at common law for the recovery of consequential damages ; that if it is a tort, it was created by statute since the adoption of the Constitution, and is not embraced in the last clause of the 84th Article, which declares the judicial power to extend "to all cases of admiralty and maritime jurisdiction ; " that the extent of our admiralty jurisdiction is to be measured by the general maritime law, and not by Hawaiian statutes ; and that, admitting that the Legislature might make additions to the jurisdiction by express enactment, it has not done so in this instance.

The clause of the Hawaiian Constitution, conferring Admiralty jurisdiction, is a literal transcript of the corresponding clause of the Constitution of the United States. In discussing the construction of the latter, Mr. Benedict, in his valuable treatise, says : "Every maritime nation has certain rules or laws in relation to ships, shipping and maritime matters, which are peculiar to itself—such as its navigation acts, its municipal regulations of its harbors, creeks, and bays, and navigable rivers, and of its own vessels, its rules in relation to drowned persons, wrecks, obstructions in rivers, prohibited nets, royal fisheries, and other *droits* of the Admiralty, constituting its maritime police. These were originally enforced by the Admiral exercising in part a high executive and administrative function, which was a portion of the royal prerogative, and was in substance confined to the waters and vessels of his own nation. The Admiralty Court was the forum through which, and by the aid of whose process, when necessary, these local municipal and administrative laws were enforced, and their violaters punished. These are, properly, the Admiralty laws of any country. Cases arising under these laws are cases of purely admiralty jurisdiction. Each nation has its own system of Admiralty law, which it changes and modifies at pleasure.

"So the word *maritime* is also to have its appropriate meaning—relating to the sea. The words admiralty and maritime, as they are used in the Constitution and acts of the Congress, are by no means synonymous, although able lawyers, on the bench as well as at the bar, seem sometimes to have so considered them. The word admiralty and the word maritime

were evidently both inserted to preclude a narrower construction, which might be given to either word, had it been used alone."

"Maritime cases are more properly those arising under the maritime law, which is not the law of a particular country, and does not rest for its character or authority on the peculiar institutions and local customs of any particular country, but consists of certain principles of equity and usages of trade, which general convenience and a common sense of justice have established to regulate the dealings and intercourse of merchants and mariners in matters relating to the sea in all the commercial countries of the world."—Benedict's Admiralty, Sections 39, 40, 41.

In giving a construction to the constitutional provision above quoted, we cannot in my opinion, follow a safer guide than the decisions of the Courts of the United States relating to this subject. Those decisions are understood to have established that the grant in the Constitution, extending the judicial power to all cases of admiralty and maritime jurisdiction, is neither to be limited to, nor to be interpreted by, what were cases of admiralty and maritime jurisdiction in England when the Constitution was adopted ; that the American Admiralty has a general maritime jurisdiction, embracing all maritime causes of action, as well in matters of contract as in matters of tort. That in matters of tort the jurisdiction depends upon the locality, and embraces all damages and injuries upon the sea. That in matters of contract the jurisdiction depends upon the subject matter—the nature of the contract—and embraces all transactions and proceedings relative to naval commerce and navigation. That the jurisdiction is not affected by the question whether the Courts of common law have jurisdiction in like cases, or whether the matter may have arisen within a port or harbor. And that the Admiralty has jurisdiction of all cases of maritime lien. [See Benedict's Admiralty, Section 261.]

I regard the admiralty and maritime jurisdiction of this Court as co-extensive, generally speaking, with that of the Admiralty Courts of the United States, except so far as the exercise of our jurisdiction may have become limited in certain cases by

treaty. This is in accordance with the judgment of Chief Justice Lee, in the case of Fessenden *vs.* the ship " Charles," Hawaiian Reports, Vol. I., page 94, and in the case of Spencer *vs.* Bailey and Gilbert, *ib.* page 108. The jurisdiction, so understood, embraces two great classes of cases, viz : torts and contracts—the jurisdiction in the first depending upon locality, (almost universally,) and in the last upon the nature of the contract. Again, the jurisdiction comprises cases arising under the general maritime law of the world, together with those appertaining especially to the admiralty jurisdiction of the nation ; and the last branch may be enlarged or circumscribed by the Legislature from time to time. New prohibitory laws may be enacted affecting ships and seafaring persons, and new maritime offenses or torts may be created by statute.

In a suit upon an alleged maritime contract, it would not avail to answer that a suit had never before been brought in Admiralty for the same specific cause. The question for the Court would be, Is this contract in its nature, or subject matter, a maritime contract ? If it is, the jurisdiction is clear. And so in this case, the simple question is as to whether or not the alleged illegal act of the respondent is a marine tort. It can not avail to say that if this is a tort it was created by statute subsequent to the adoption of the Constitution, and is therefore not included in the clause, " all cases of admiralty and maritime jurisdiction ;" for to say that such clause embraces only cases which had arisen, and been entertained, previous to the adoption of the Constitution, is obviously unsound, as will appear by applying the same principle to the next preceding clause of the article referred to, relating to suits affecting ambassadors and consuls. Nor is it necessary, in my opinion, that the Legislature should have *expressly* enacted that the Court of Admiralty should have jurisdiction in cases arising under Section 651 of the Civil Code. I think it is sufficient reason for holding that the jurisdiction does attain, if the act prohibited is a marine tort, and if the remedy or redress prescribed by the statute is such as a Court of Admiralty is competent to afford. Where such is the case, it seems to me that a party plaintiff has a right to appeal to a Court of Admiralty, although a Court of Common Law may also have concurrent jurisdiction of the

matter.   And the objection that has sometimes been made, and always overruled, to the jurisdiction of Admiralty Courts in the United States, that the defendant did not have the benefit of a trial by jury, has but little weight here, where the Court may, at its discretion, impannel a special jury to try any issues of fact involved in the cause.   (Civil Code, Section 1238.")

It seems to me too that the redress allowed to the party injured in this class of cases is such as may be enforced by a Court of Admiralty with greater facility than by a Court of Common Law, at least in all cases where it becomes necessary to pursue the remedy as against the vessel.   If the suit was brought at common law, and continued up to judgment, against the master, and it then became necessary to have recourse against the vessel *in rem*, that would necessitate, in my opinion, a resort to the Court of Admiralty.   But if the suit is originally brought in admiralty, that Court is competent, by its peculiar process and powers, to afford the proper redress as against both the master and the vessel.

But it is argued on the part of the respondent that the act of conveying a debtor out of the Kingdom without a passport is not a tort done to the creditor, or, at all events, not a *marine* tort—such a tort or injury as can be made the basis of a suit in admiralty.   I am free to confess that such was my own impression at first ; but, upon examination, I think this objection cannot be sustained.   If the master of a vessel conveys any person out of the Kingdom without a passport, in contravention of the law referred to, his act is first a violation of a local maritime regulation, punishable by fine ; and then it is made by force of the statute a civil tort, or wrong, affecting the rights of any person to whom the party conveyed away may be indebted, for which, and for the fine, the master first and then the vessel may be held responsible to the amount of the fine and debt.   The injury to the creditor is created by statute, and it is measured pecuniarily by the amount of his debt.

Counsel for the respondent, while admitting that *locality* is the test to discover whether or not any act complained of is a marine tort, argued that this Court cannot entertain a suit founded upon a tort or injury, which was not committed upon the person or property of some one, such person or property

being at the time on the sea. In other words, as I understood his argument, that all marine torts are trespasses. But, it will be seen by reference to the authorities, that there is a class of wrongs, or torts, for which redress is given in admiralty, which are not trespasses to the person or property of the party suing. (Curtis' Ad. Digest, p. 35 ; Conkling's U. S. Admiralty, p. 329.) In the case of Plummer *vs.* Webb, 4 Mason's Rep. 380, it was decided that a father may maintain a suit in admiralty for a tortious abduction of his minor son, on a voyage on the high seas, in the nature of an action *per quod servilium amisit*, for it is a continuing tort. The same doctrine was held in the case of Sherwood *vs.* Hall *et al.*, 3 Sumner's Rep. 127, where the suit was maintained against the owners of the vessel in which the minor had been employed as a seaman. So in the case of Steele *vs.* Thatcher, Ware's Reports 85, where the suit was by the father against the master of the vessel. In that case the question of jurisdiction was raised, as in the case now before us, it being contended that, admitting the master's conduct to be illegal, and that he might be held to answer for it at common law, the subject matter of the libel was not within the admiralty jurisdiction. The objection was overruled by the Court, and Judge Ware, after a learned examination of the point, said, "In this case the question as to the jurisdiction must be determined by the locality of the act, whether it was done on the high seas. The act complained of by the libellant is the shipping his son, a minor, at Portland, and transporting him to parts beyond the sea, to wit, to Grenada, in the West Indies, without his consent. The contract was made on shore ; but the contract, admitting it to be illegal, does not constitute the tort. The execution of the contract is that in which the tort consists, and that was on the high seas."

If these cases are sound law, and I have no doubt it will be admitted they are so, it seems to me that the admiralty jurisdiction in the case now before us is clear; for, if the respondent could be held to answer in admiralty for tortious acts beginning on shore, *a fortiori*, he may be held to answer there for the statutory tort of conveying a debtor out of the Kingdom without a passport, which, to use the language of the Court in the case of the United States *vs.* " La Vengeance," (1 Curtis' Decis-

ions of Supreme Court U. S., p. 230,) "is entirely a water transaction," and must, from the nature of the case, and the insular situation of the Kingdom, have been done upon the high sea; so that, in point of locality, even Lord Coke, with all his jealousy of the admiralty jurisdiction, would probably have admitted that it attached in cases of this nature, for he says, "*Altum mare* is out of the jurisdiction of the common law, and within the jurisdiction of the Lord High Admiral." (Co. Litt. 260, a.)

As additional cases in which it has been held that Courts of Admiralty can award damages for consequential injuries, arising from tortious acts, although not direct trespasses, I may refer to Chamberlaine *vs.* Chandler, 3 Mason's Rep. 242; the "Betsy Caines," 2 Haggard's Rep. 28. These, however, are not referred to as being precisely in point in the present instance.

I have examined the subject involved in this case with considerable care, because, where, as with us, the same courts and judges administer all the several branches of jurisprudence, there is some danger of the boundaries between those several branches being lost sight of; and because I concur in the opinion verbally expressed by the Chief Justice, that, while we will not refuse to hear in admiralty what may properly be propounded there, we ought, at the same time, to preserve to the subject, whether plaintiff or defendant, the right to a common law trial, so far as the law guarantees it.

In this case, I am of the opinion that the suit may be maintained in admiralty; although, so far at least as the remedy against the respondent in prison is concerned, it might be sought at common law, the jurisdiction being concurrent to that extent.

Chief Justice ALLEN concurred in the judgment.

Mr. Harris and Mr. Montgomery for libellant.

Mr. Bates for the respondent.